## KANSAS POWER CO. v. CITY OF HOISINGTON, KAN., et al.
### No. 1465.

Circuit Court of Appeals, Tenth Circuit.

April 5, 1937.

LaRue Royce, of Salina, Kan. (C. W. Burch, B. I. Litowich, L. E. Clevenger, and E. S. Hampton, all of Salina, Kan., on the brief), for appellant.

Robert B. Fizzell, of Kansas City, Mo. (Bowersock, Fizzell & Rhodes, of Kansas City, Mo., on the brief), for appellees.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

LEWIS, Circuit Judge.

Appellant, a Kansas corporation, instituted this suit December 24, 1935, against the City of Hoisington, Kansas, a municipality of the second class, and its Mayor and Board of Commissioners to restrain and enjoin them from erecting and thereafter maintaining and operating an electrical generating plant and distribution system to serve its needs and that of its inhabitants and from issuing the city's bonds for that purpose. It made the Reconstruction Finance Corporation and Harold L. Ickes, as Federal Emergency Administrator of Public Works, defendants also, but dismissed as to them before final disposition of the cause in the District Court. The bill also sought to restrain and enjoin them from furnishing a loan and grant to the city of funds to be used in the construction of the plant as provided in the National Industrial Recovery Act, titles I and II. 48 Stat. 195. The Federal Act is alleged to be unconstitutional and therefore invalid and void for several reasons. It is also alleged that the City in the steps taken by it to authorize the construction of the plant is acting under Chapter 32 of the Laws of Kansas, Special Session 1933; that said chapter is also void because it is in violation of both the Federal and state constitutions for reasons stated in the bill. On final hearing the suit was dismissed on its merits.

We think the District Court had jurisdiction, and therefore accept the appeal.

Section 24 of the Judicial Code (28 U.S.C. A. § 41) provides:

"The district courts shall have original jurisdiction as follows:

"Of all suits of a civil nature, at common law or in equity, * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States."

As to the Federal Act and Federal Constitution, little need be said in view of our decision in Kansas Gas & Electric Co. v. City of Independence, 79 F.(2d) 32, 100 A. L.R. 1479, and Id., 79 F.(2d) at page 638 on rehearing. There the same act was challenged on the same grounds as here, and we held it valid,—that it was within the general welfare clause of section 8, article 1, of the Federal Constitution.

The objections stated in the bill to the legislative act known as chapter 32, Special Session 1933 Kansas, are that it provides a method of confiscating the property of complainant without due process of law and without compensation in violation of both the state and Federal Constitution. Apparently in support of that broad allegation it is stated in the bill that if the income from the plant when put in operation is not sufficient when reasonable rates are charged to pay the cost of operation, improvement, maintenance and depreciation and to pay the interest and principal of said bonds, then it will be necessary that the city levy and collect a tax for street lighting and other municipal needs; that complainant and other taxpayers will be compelled as taxpayers to pay such levies and that will result in confiscation of complainant's property without due process of law; that said chapter 32 is invalid and void because it is too general in its terms, is oppressive and contrary to public policy. It is alleged that said revenue bonds, if issued, will be invalid because the act provides that in no case shall bonds be issued in excess of the actual cost of the plant, and the governing body of the city do not know what said project will cost, but the plant will, in fact, cost more than $150,000.

Chapter 32 specifically authorizes the issuance of revenue bonds for the construction of such plants by a municipality, and it provides that they are to be paid exclusively from the revenues derived from the operation of the utility. The money received for the bonds is to be used for the construction, reconstruction, alteration, repair, improvement, extension or enlargement of any utility, and they may be issued and sold in payment of the cost of such utility. The municipality is authorized to fix by ordinance or resolution such rates, fees or charges for the use thereof or service therefrom as may be reasonable and necessary. Revenue derived from the operation of any utility financed by revenue bonds authorized by the act shall be paid into the treasury of the municipality and kept in a separate fund and shall not be used except for the purpose of paying the cost of operation and maintenance and improvement of the utility. An adequate depreciation fund shall be provided. Such bonds are made a lien on the revenues produced from such utility, but shall not be general obligations of the issuing municipality, and they shall contain recitals containing the authority under which they are issued. Bonds and interest thereon are to be paid from the revenues derived from the rates, fees or charges mentioned and not from any other fund or source. They shall be negotiable and may be issued in addition to the statutory limit of bonded indebtedness of the issuing municipality.

The city before proceeding in the matter took the necessary precautions to ascertain the cost of the entire plant. It employed a reputable and experienced electrical engineer to investigate and ascertain the cost of such an outlay for a plant of the character proposed that would supply the city and its inhabitants. He made a detailed report in which he set forth the different classes and amounts and cost of material to be used in the distribution system and in the power plant and the cost of labor, including engineering and legal charges and contingencies, making a total cost of $150,000 required to construct the whole plant. Thereafter the board of commissioners took the proper steps to submit the proposition to the vote of the electors at an election to be held pursuant to the provisions of chapter 32. The election was duly held. The issue stated in the ballots was whether revenue bonds in the sum of $150,000 for the purpose of constructing a complete electric generating plant and distribution system to supply the city and its inhabitants with electrical energy for light, heat and power should be issued pursuant to the provisions of chapter 32 of the Laws of Kansas, Special Session 1933, said bonds and interest thereon not to constitute general

360

obligations of the city, but to be paid solely from the revenues produced from said electric generating plant and distribution system. The proposition was carried by more than a two-thirds vote which said chapter 32 required. Thereafter on the advice of the electrical engineer employed by the city there was a change in the Diesel engines of the power plant which materially reduced his estimated cost, which he recommended. The successful bidder thereupon reduced his bid several thousand dollars below $150,000.

The Supreme Court of Kansas in an opinion in the case of City of Pittsburg v. Robb, 143 Kan. 1, 53 P.(2d) 203, sustained chapter 32 of the special session as a valid enactment. Section 5 of said chapter 32 contains this provision:

"Such bonds may be sold to the government of the United States, or any of its agencies, under the provisions of the national industrial recovery act, or other federal law, and regulations made in pursuance thereof," etc.

Complainant did not have a generating plant within the city. It had only a distributing system therein and brought current from its plant some distance away. The bill discloses that it had a franchise to furnish the city electric current for light, power and other needs granted to it in August, 1913, and that it installed the distribution system within the city for that purpose, but it was not stated when that franchise had or would terminate. It was a non-exclusive franchise. It was stipulated after the pleadings were made up that it had terminated in August, 1934. On July 9, 1934, the city served notice on complainant that its franchise would expire on August 13, 1934, and that it would not be renewed. We fail to find any just criticism of the city in the exercise of the powers given to it by said chapter 32, nor any injurious or unlawful acts detrimental to appellant. The only right on which it relies to maintain the suit is that it is a taxpayer, national, state and local, but after its franchise expired and it received notice in July, 1934, which was prior to the institution of the suit, it was at liberty to remove its distribution system on the expiration of its franchise in the following month, unless it obtained from the city the right to remain. It seems to have remained only by sufferance. We agree with the District Court.

The bill is without merit. The decree appealed from will be affirmed. It is so ordered.